IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MICHAEL WINNE, | CV-15-00044-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| CORRECTIONAL OFFICER JOSH KNIGHT, SERGEANT WEBER, and CANDICE NEUBAUER. | |
| Defendants. | |

Plaintiff Michael Winne, an inmate proceeding in forma pauperis and without counsel, filed a Complaint under 42 U.S.C. § 1983 alleging Defendant Knight (at the instruction of Defendant Weber) used excessive force in violation of the Eighth Amendment cruel and unusual punishment clause of the United States Constitution. (Complaint, Doc. 2 at 8.) He also alleges that Defendant Neubauer made a false statement in a January 23, 2015 classification summary in conspiracy with the other defendants to cover up the use of force. (Complaint, Doc. 2 at 9.)

Defendants filed a Motion for Summary Judgment arguing Mr. Winne failed to exhaust his administrative remedies. (Doc. 15.) A hearing was held on the motion and the parties were provided an opportunity to file supplemental briefing on issues raised at the hearing. Having considered the parties' arguments and

1

submissions, the Court finds that Defendants met their burden of demonstrating that administrative remedies were available and that Mr. Winne failed to utilize those administrative remedies. Therefore, the Motion for Summary Judgment should be granted.

Mr. Winne's motion to stop filing duplicate documents (Doc. 70), motion to strike Officer Pentland's affidavit (Doc. 71), motion to compel (Doc. 72) and motion to strike Billie Reich's affidavit (Doc. 73) will be denied.

## I.     NON-DISPOSTIVIE MOTIONS

### A.     MOTION TO STOP FILING DUPLICATE DOCUMENTS (Doc. 70) and MOTION TO STRIKE OFFICER PENTLAND'S AFFIDAVIT (Doc. 71)

Mr. Winne complains that the same documents are being repeatedly filed in this case. There is no indication, however, how these repetitious filings prejudice Mr. Winne. Many of the documents have simply been referred to by several different witnesses and attached to their affidavits. This is not a violation of the rules and not a basis upon which to deny summary judgment.

The motions will be denied.

### B.     MOTION TO COMPEL (Doc. 72)

Mr. Winne seeks to have the Court require two witnesses to write affidavits for him. There is no compulsory process under the Federal Rules of Civil

Procedure by which the Court can compel a non-party to prepare and sign an affidavit. *Lyons v. Leach*, 2014 U.S. Dist. LEXIS 26478, at *6, 2014 WL 823411 (E.D. Mich. Mar. 3, 2014) (A non-party was "not required to create an affidavit in order to respond to the subpoena" issued by a pro se prisoner in a § 1983 action); *Martin v. Posey*, 2017 U.S. Dist. LEXIS 13214, at *20, 2017 WL 412876 (S.D. Ohio Jan. 31, 2017) (The Court denied pro se prisoner plaintiff's "requests that these witnesses create an affidavit in response to [his] subpoena" or that the clerk issue subpoenas requesting affidavits from non-party witnesses).

As such, the motion will be denied.

## C. MOTION TO STRIKE BILLIE REICH'S AFFIDAVIT (Doc. 73)

Mr. Winne also moves to strike Ms. Reich's affidavit because it is allegedly inconsistent with the affidavit of Mr. Christopher Conell. Inconsistency between affidavits is not a basis upon which to strike the affidavits. The Court has taken the alleged inconsistency into account in evaluating Defendants' Motion but it will not strike the affidavits filed by Defendants. The motion will be denied.

## II. MOTION FOR SUMMARY JUDGMENT

### A. STANDARD

The Ninth Circuit in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), held that the proper procedural device for determining whether

3

administrative remedies have been exhausted is a motion for summary judgment. *Id.* at 1168. Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id.* at 159.

A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

By notice provided on January 26, 2016 (Doc. 19), Mr. Winne was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### B. FACTS

#### 1. Inmate Orientation

At all time relevant to his Complaint, Mr. Winne was an inmate at MSP. (Complaint, Doc. 2 at 3.)  When he arrived at MSP on March 8, 2013, he was seriously ill.  He described himself as 53-year-old with a serious heart condition, who had suffered a broken neck and broken back in a car accident before he arrived at prison, and suffered from C.O.P.D.  (Complaint, Doc. 2 at 9.) Classification documentation completed by Monique Miller on April 4, 2013, describes Mr. Winne's condition as follows:

> Winne arrived at MSP as an Administrative Transfer to MSP due to immediate medical needs.  He is a probation violator with a revoked sentence.  He violated by acquiring a felony DUI charge.  He came to MSP with serious life threatening issues.  He has been assigned a chest strap that acts as a defibulator.  Should a medical emergency arise with this offender, staff should be at tentative to this issue to avoid electrical shock.  He is medically requested to be placed into general population as soon as possible to more appropriately address his medical needs.  This UMT supports this recommendation and is requesting that he be placed as a direct low side placement as a priority at minimum restricted custody.

(April 4, 2014 Classification, Doc. 18-4 at 3.)

Upon their arrival at MSP, the majority of inmates are initially housed in the Martz Diagnostic Intake Unit ("MDIU") where they undergo an admission/ classification process.  Mr. Winne, however, was placed in the infirmary upon his

arrival at MSP where he remained until March 26, 2013, when he was taken to the

MDIU.  (Response to Cobban Affidavit, Doc. 32; UM Shaw's March 26, 2013

Memo to MDIU staff re: Winne's medical condition, Doc. 24-1 at 2.)  Mr. Winne

was housed in MDIU from March 26 through March 28, 2013 and from March 30

through April 9, 2013.  (Cobban Affidavit, Doc. 30-1 at 3, ¶ 8.)

During the admissions process it is standard practice to give inmates copies

of the facility's policies and procedures when they enter the facility, including the

Grievance Procedure.  Inmates are also required to fill out and sign a number of

documents during this admissions process.  (Cobban Affidavit, Doc. 30 at ¶ 5.)

Defendants represent that Mr. Winne went through the admissions process on

March 12, 2013, with Intake Officer Cliff Curnow.  Mr. Winne was in the prison

infirmary on March 12, 2013.  (Response to Cobban Affidavit, Doc. 32; UM

Shaw's March 26, 2013 Memo to MDIU staff re: Winne's medical condition, Doc.

24-1 at 2.)  Defendants contend that it would have been normal procedure for Mr.

Curnow to provide Mr. Winne with prison policies, including the Grievance

Procedure, and have Mr. Winne sign a number of documents.  Defendants

submitted four orientation documents signed by Mr. Winne on March 12, 2013.

(Doc. 30-2.)

During the admission process at the MDIU, inmates are also given an

orientation on the Prison Rape Elimination Act ("PREA"). The "PREA orientation" is conducted in two parts, the video presentation upon intake and then the verbal review of how to report and ask questions of staff at the Facility orientation conducted as a group in MDIU, usually after video is viewed. This "PREA orientation" discusses classification, disciplinary, grievance, PREA, and Unit and facility regulations and processes. The policies and procedures are given to the inmate in paper format to read upon intake to the facility. Orientation staff reviews the material verbally and allows inmates to ask questions that may have arose from review of the written material and to ensure those with disabilities are able to review the information in a format that meets their needs. Although the actual PREA video training is only one portion of this larger orientation, the prison commonly refers to the entire orientation-including all of its sub-parts, such as the grievance training-in documents and in speech as the "PREA orientation."

In addition to the orientation at MDIU, inmates can review MSP's Procedures at MSP's library. (Cobban Affidavit, Doc. 30-1 at 6, ¶ 16.)

## 2. Incident at Issue

Officer Knight used force while escorting Mr. Winne within MSP on January 19, 2015. (SUF, Doc. 17 at ¶ 7.) Mr. Winne alleges that Sgt. Weber instructed Officer Knight to "rough Plaintiff Winne up on the way to lock-up." He

contends Officer Knight handcuffed him and threw him down on the concrete sidewalk breaking his arm and crushing his right hand. He alleges this use of force was excessive and unwarranted. (Complaint, Doc. 2 at 8.)

Mr. Winne received a disciplinary write-up arising out of the January 19, 2015 incident in which Officer Knight described the incident at issue as follows:

> I c/o Knight placed Winnie [sic] in handcuffs and was walking him to the escort cushman to drive him to LHU-1. Once outside the door inmate Winnie [sic] began pulling away from me, I told Winnie [sic] not to resist and get in the cushman for his escort, at that time Winnie [sic] pulled away from me and pulled his head back in a motion that appeared to be an attempt to either head butt or spit on me. At that time I c/o Knight placed Winnie [sic]on the ground to avoid the assault. Once on the ground Winnie [sic] made multiple attempts to kick me.

(Disciplinary Infraction Report, Doc. 18-3 at 1.)

After the incident, Mr. Winne was taken to the infirmary which noted a noteable deformity to the bicep area of Mr. Winne's right arm. He was sent to the hospital by car for evaluation. (Incident Report Form, Doc. 18-3 at 6.)

### 3. Disciplinary Write-Up and Hearing

Mr. Winne received a Disciplinary Infraction Report and Notice of Hearing regarding the incident on January 19, 2015. (SUF, Doc. 17 at ¶ 8; Disciplinary Infraction Report, Doc. 18-3 at 1.) He was charged with obstructing staff, threatening staff, and refusing a verbal order. (*Id*). Mr. Winne "Refused" to sign

the infraction report as indicated by Lt. Kester.  (Id).  The Warden or the Warden's representative signed the report on January 20, 2015, and the form was received by the disciplinary department on January 20, 2015.  (*Id*).  The form states that the hearing would be held on January 23, 2015.  (*Id.*)

At the January 23, 2015 hearing, Mr. Winne entered a "not guilty" plea but the hearing officer found him guilty because "trying to pull away from staff while being escorted is prohibited" and because Mr. Winne "made an attempt to kick staff which was a threat towards staff."  (Hearing Decision, Doc. 18-3 at 2.)  The hearing officer imposed a punishment of 15 days detention with credit for four days with his detention ending February 3, 2015 and a $15.00 fine.  (*Id.*)

A Disciplinary Hearing Decision form was completed and signed by the hearing officer, an administrator, and Mr. Winne.  (SUF, Doc. 17 at ¶ 9.)  Mr. Winne signed the form by marking two Xs on the line for the inmate signature. (Doc. 18-3 at 2.)  He filled in the checkbox next to the phrase "I DO WISH TO APPEAL."  (SUF, Doc. 17 at ¶ 12.)  Directly above the checkbox that Mr. Winne filled in is the following in large bold letters:

> I understand, that I may appeal the decision of the Disciplinary Hearings Officer to the Warden.  In order to file an appeal, I must submit a completed appeal form to the Disciplinary Hearings Officer within 15 days from today.

(SUF, Doc. 17 at ¶ 13.)

The 15 days to appeal expired on February 7, 2015. Mr. Winne never submitted an appeal form or any other information setting forth the grounds for his appeal. (SUF, Doc. 17 at ¶ 14; Doc. 18-3 at 2.)

Mr. Winne signed other Disciplinary Hearing Decision forms on three separate occasions prior to his hearing on January 23, 2015. He indicated his intent to appeal one of those disciplinary decisions, and completed the appeal process for that decision. (SUF, Doc. 17 at ¶ 15.)

## 4. MSP Grievance Procedure

The Montana Department of Corrections and MSP have an Inmate Grievance Program that provides that "classification [and] disciplinary" decisions are not grievable under the inmate grievance program. (MSP Policy 3.3.3, Doc. 18-1 at III(A)(2).) "All other issues including, but not limited to, health care, staff conduct, written policy or procedures, and other standard grievance matters such as property, mail, food service, conditions of confinement, program access, or religious issues are grievable." (MSP Policy 3.3.3, Doc. 18-1 at III(B)(1).)

With the exception of emergency grievances, the Inmate Grievance Program involves four steps: (1) informal resolution, (2) formal grievance, (3) appeal to the Warden, and (4) appeal to the Director of the DOC. (Doc. 18-1, MSP Policy 3.3.3, §§ III(E), III(F), III(I), III(K).) There are timelines for properly submitting

grievances under the Inmate Grievance Policy.  (Doc. 18-1, MSP Policy 3.3.3 § III(D).)  "If an inmate fails to advance to the next level of the grievance program within the stated time limit, he will be considered to have forfeited the opportunity to exhaust his administrative remedies under the inmate grievance program." (Doc. 18-1, MSP Policy 3.3.3, § III(D)(5).)

Mr. Winne filed six grievances between March 8, 2013 and January 1, 2015. Four of these were informal resolutions; two were granted and two were denied. Mr. Winne proceeded to the formal level on two of these informal resolutions, resulting in one denial and one which was not processed.  Mr. Winne did not advance any of the other four grievances to the formal level of the process.  He did not advance any of his grievances to the appeal levels.  (Cobban Affidavit, Doc. 30-1 at 6.)

Mr. Winne did not file a grievance about Knight, Weber, or Neubauer regarding the January 19, 2015 incident or any of his claims alleged in this action. (SUF, Doc. 17 at ¶ 23.)

### 5.  Classification Process

When inmates arrive at MSP and are initially housed in the MDIU, they undergo a classification process.  During the inmate classification process an Initial Classification Summary is generated for each inmate that evidences the

classification and needs of that inmate. An inmate's classification is reviewed on a recurring basis throughout their time at MSP, as well as when the inmate is reentering MSP after being at another facility. (Cobban Aff., Doc. 30-1 at 3, ¶ 9.)

Mr. Winne received a special initial classification on April 4, 2013, due to his special medical issues. (April 4, 2013 Classification, Doc. 30-3 at 3.) He received a special classification on November 22, 2013, a reclassification on June 16, 2014, a special classification on December 24, 2014, and a special reclassification dated January 23, 2015. (Reich Aff., Doc. 67 at 5-6, ¶¶ 14-17.) On the classification summary forms, there is a box that an inmate can check to indicate that they want to appeal the classification. Mr. Winne checked this box on two of his classification summary forms. (Classification Summary dated June 16, 2014, Doc. 30-3 at 15; Classification Summary dated December 24, 2014, Doc. 30-3 at 20.) He did not submit the appeal form for either of these classifications. (Reich Aff., Doc. 67 at 5-6, ¶¶ 15-16.)

A special classification of Mr. Winne was conducted on January 23, 2015, and it factored in the violation from the Disciplinary Hearing performed the same day as a result of the January 19, 2015 use of force incident. (SUF, Doc. 17 at ¶ 17.) In the comment section on the form, it indicates the following:

> The circumstances behind the write-up he received for Obstructing on
> 1-29-15 [sic] are particularly concerning because it involved a

situation in which inmate Winne refused to be hand cuffed and
attempted to kick/assault staff.  Due to this incident use of force had to
be applied.

(January 23, 2015 Classification Summary, Doc. 30-3 at 27.)  Based upon these

statements, Mr. Winne alleges that Candice Neubaur, in her position as the MSP

Classification and Treatment Director, ordered a cover-up of Officer Knight's use

of force and filed a false report in conspiracy with the other defendants.

Specifically, he alleges that Ms. Neubaur's statement that Mr. Winne refused to be

handcuffed and attempted to kick/assault staff was false.  (Complaint, Doc. 2 at 9.)

Mr. Winne did not check a box to indicate whether he wanted to appeal or

not and he did not submit an appeal regarding this reclassification.  (SUF, Doc. 17

at ¶ 18.)

## C.    DISCUSSION

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement

states:

[n]o action shall be brought with respect to prison conditions under
section 1983 of this title, or any other Federal law, by a prisoner
confined in any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002);

*Booth v. Churner*, 532 U.S. 731, 741 (2001).  This means a prisoner must

"complete the administrative review process in accordance with the applicable

procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth v. Churner,* 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' " *Ross v. Blake*, 136 S.Ct. 1850, 1858 (June 6, 2016) (citing *Booth*, 532 U.S., at

737–738.)  Therefore, inmates must exhaust those "grievance procedures that are

'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* at 1859

(quoting *Booth*, 532 U.S., at 738, 121 S.Ct. 1819.)

There are three general situations that can render a prison or jail grievance

process unavailable to an inmate.  First, an administrative procedure is not

available, and therefore need not be exhausted, "when (despite what regulations or

guidance materials may promise) it operates as a simple dead end—with officers

unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*,

136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes,

practically speaking, incapable of use.  In this situation, some mechanism exists to

provide relief, but no ordinary prisoner can discern or navigate it." *Id.*  "When

rules are so confusing that no reasonable prisoner can use them, then they're no

longer available." *Id.* (internal quotation marks and alteration omitted).  However,

the procedures need not be sufficiently "plain" as to preclude any reasonable

mistake or debate with respect to their meaning. *Id.*  Therefore, when an

administrative process is susceptible of multiple reasonable interpretations,

Congress has determined that the inmate should err on the side of exhaustion. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison

administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Defendants argue that Mr. Winne failed to exhaust his administrative remedies because he did not file a grievance regarding the alleged staff misconduct by Officer Knight or Sgt. Weber, he did not appeal the January 23, 2015 disciplinary hearing decision, and he did not appeal the classification summary signed by Ms. Neubauer, which Mr. Winne alleges contains false statements.

In response, Mr. Winne argues that (1) he did not receive orientation on the grievance procedures at MSP due to his medical conditions; (2) he was placed on

opiates after the incident for treatment of his broken arm and therefore medically unable to appeal his classification/discipline due to the euphoric effects of the prescribed painkillers; and (3) MSP policy provides that you cannot use the grievance system to appeal disciplinary or classification decisions.

### 1. Failure to File a Grievance

It is undisputed that MSP has an Inmate Grievance Program and Mr. Winne did not file a grievance regarding his claim that Defendant Weber directed Defendant Knight to use excessive force against him on January 19, 2015.

Although it is disputed whether Mr. Winne was ever oriented on the specifics of the grievance process, that is not material to the Court's analysis because it is undisputed that Mr. Winne filed six grievances prior to the January 19, 2015 incident (Cobban Affidavit, Doc. 30-1 at 6, ¶ 17). Unlike the situation in *Albino*, there is no evidence here that prison officials dissuaded or interfered with Mr. Winne from pursuing any administrative remedies available to him or that Mr. Winne was unaware that administrative remedies were available to him. Therefore, it is undisputed that Mr. Winne was aware there was a grievance process and how he could initiate that process.

Furthermore, although Mr. Winne's interpretation of the grievance process was that he was not to use it because he had received a disciplinary write-up, he

did not err on the side of exhaustion as the law required him to. Rather, Mr. Winne decided on his own not to follow the grievance process in relation to his claims against Defendants Knight and Weber.

As such, Mr. Winne did not exhaust the grievance process in relation to his claims against Defendants Knight and Weber.

### 2. Disciplinary Appeal

Mr. Winne next argues that the grievance policy states that you cannot use the grievance system to appeal disciplinary or classification decisions. Even if Mr. Winne did not need to file a grievance regarding the January 19, 2015 incident because there were classification and disciplinary issues involved, he failed to appeal the disciplinary decision and therefore failed to exhaust his administrative remedies.

Defendants presented evidence that Mr. Winne was aware of the procedure for filing an appeal of a disciplinary decision. He had just completed this process in November 2014 when he appealed a November 12, 2014 disciplinary hearing decision. (Disciplinary Appeal, Doc. 68-2 at 7; Pentland Aff., Doc. 68 at ¶¶ 20-23; Winne's discovery responses, Doc. 63-1, RFA 5, ROG 5.) As such, Mr. Winne was aware of the appeal process for disciplinary proceedings and he knew how to utilize this process.

DHO Pentland testified that he gave the appeal form to Mr. Winne at the conclusion of the hearing.  (Doc. 68, Pentland Aff., at ¶ 30.)  Even if Mr. Winne had not been given the form at the hearing, he could have obtained one from the library, on his unit, or by a kite to the disciplinary or grievance office.  (Reich Aff., Doc. 67 at ¶ 9; Turner Aff., Doc. 64 at ¶ 11; Haugen Aff., at ¶¶ 4-5.)  Again, Mr. Winne was clearly aware of the process for filing an appeal of a disciplinary decision and he failed to take advantage of it.

Mr. Winne also argues that he was on medications immediately following the incident at issue and therefore not in the right state of mind to file a grievance or appeal his disciplinary hearing or his reclassification.  (Rebuttal, Doc. 24-2 at 1.)  On January 23, 2015, the day of Mr. Winne's disciplinary hearing, Mr. Winne received one 200 mg tablet of Tramadol at 7:00 a.m.  Yet, Mr. Winne had been taking Ultram or its equivalent Tramadol since at least November 2013, and he continues to take it through the present.  (Medication record, Doc. 69-1 at 6.)  He therefore cannot plausibly argue that he was so impaired at the disciplinary hearing that he was unable to understand what occurred.

Mr. Winne was given 10 mg of oxycodone at 7:00 p.m. on January 23, 2015 and twice a day thereafter until approximately February 27, 2015.  (Doc. 69-1 at 6, 9.)  Even if Mr. Winne was impaired as a result of the oxycodone, there is no

evidence that he made any attempt to file a grievance or a disciplinary appeal after he was no longer under the influence of medications as allowed for by prison policy.  (Reply, Doc. 26 at 6 (citing MSP Policy 3.3.3, Doc. 18-1 at ¶ III(D)(2).)

As such, Mr. Winne did not exhaust his administrative remedies with regard to his disciplinary hearing.

### 3.  Classification Decision

Defendants argue that Mr. Winne's claim that Ms. Neubaur made a false statement in a January 23, 2015 classification summary in a conspiracy with the other defendants to cover up the use of excessive force should also be dismissed for failure to exhaust the MSP appeal process applicable to the change in classification.  Although Mr. Winne could not use the grievance process to challenge the classification decision, he could utilize the change in classification appeal process.

In response to Defendants' Requests for Admissions, Mr. Winne admitted that he was given an opportunity to appeal his reclassification on January 23, 2015 and he did not do so stating, "to appeal would be futile."  (Doc. 63-1 at 1.) However, proper exhaustion is required "even where it may appear futile."  *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010) (quoting *Booth v. Churner*, 532 U.S. 731, 741 (2001).)

Mr. Winne attached to his supplemental brief on classification a form for "Inmate Appeal of Classification Action." (Doc. 55-1.) According to this form, an appeal had to be sent to the inmate's unit manager within 10 days of receipt of the classification decision. Mr. Winne made a statement in his supplemental brief on classification that he has never been supplied with the appeal form to properly appeal. (Doc. 55 at 2.) Yet, in light of his discovery admissions that he did not appeal because it would be futile, the Court need not address whether or not he was provided a form.

Mr. Winne's admission that he did not appeal his classification because he believed it was futile means he failed to exhaust his administrative remedies.

## III. CONCLUSION

Mr. Winne failed to file a grievance regarding the January 19, 2015 incident, he failed to appeal his disciplinary hearing regarding this incident, and he failed to appeal his January 23, 2015 reclassification based upon the same incident. As such, he failed to exhaust his administrative remedies with regard to all claims and this matter should be dismissed pursuant to 42 U.S.C. § 1997e(a).

Based upon the foregoing, the Court issues the following:

### ORDER

1. Mr. Winne's Motion to Stop Filing Duplicate Documents (Doc. 70) is

DENIED.

2.  Mr. Winne's Motion to Strike Officer Pentland's Affidavit (Doc. 71) is DENIED.

3.  Mr. Winne's Motion to Compel (Doc. 72) is DENIED.

4.  Mr. Winne's Motion to Strike Billie Reich's Affidavit (Doc. 73) is DENIED.

Further, the Court issues the following:

## RECOMMENDATIONS

Defendants' Motion for Summary Judgment (Doc. 15) should be GRANTED and this matter DISMISSED.  The Clerk of Court should be directed to close the case and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations

within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure

to timely file written objections may bar a de novo determination by the district

judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

until entry of the District Court's final judgment.

DATED this 14th day of April 2017.


/s/ John Johnston
John Johnston
United States Magistrate

---

[1]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.